IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 19, 2019 Session

## CARL SHORT EX REL. ALLISON HOPE SHORT v. METRO KNOXVILLE HMA, LLC, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-346-17     William T. Ailor, Judge**

_____

**No. E2018-02292-COA-R3-CV**

_____

This appeal concerns healthcare liability.  Carl Short ("Plaintiff"), widower of Allison Short ("Decedent"), filed suit in the Circuit Court for Knox County ("the Trial Court") alleging negligence in his late wife's medical treatment against a number of physicians ("Physician Defendants") and Turkey Creek Medical Center ("the Hospital") ("Defendants," collectively).  Defendants moved to dismiss on the basis of noncompliance with Tenn. Code Ann. § 29-26-121(a)(2)(E), which requires that pre-suit notice include a HIPAA compliant medical authorization allowing the healthcare provider receiving the notice to obtain complete medical records from every other provider that is sent a notice.[1]  Plaintiff's authorizations allowed each provider to disclose complete medical records to each named provider although it did not state specifically that each provider could request records from the other.  The Trial Court held that Plaintiff's authorizations failed to substantially comply with the statute's requirements because of this failure to explicitly allow each provider to obtain records.  Plaintiff appeals.  We hold that Plaintiff's method of permitting Defendants access to Decedent's medical records substantially complied with Tenn. Code Ann. § 29-26-121(a)(2)(E).  We reverse the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., joined.  THOMAS R. FRIERSON, II, J., filed a dissenting opinion.

_____

[1] HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936.

Weldon E. Patterson, Louis W. Ringger, III, and Grant E. Mitchell, Knoxville, Tennessee, for the appellant, Carl Short, individually and as next of kin of Allison Hope Short, deceased.

James E. Looper, Jr., Carson W. King, and Nathaniel T. Gorman, Nashville, Tennessee, for the appellees, Sparrow Emergency Physicians, PLLC, Douglas E. Holland, M.D., and Michael D. Phillips, M.D.

C.J. Gideon, Jr., J. Blake Carter, and Jordan K. Gibson, Nashville, Tennessee, for the appellee, Metro Knoxville HMA, LLC d/b/a Turkey Creek Medical Center.

## OPINION

### Background

Decedent, age 29, died in May 2016 while pregnant with her first child. Decedent had developed a pneumonic condition and infection over the course of three visits to the emergency room at the Hospital. Plaintiff filed suit in September 2017, after pre-suit notice was given, against Defendants for negligence in the death of Decedent and their unborn child. Plaintiff sent each Defendant a packet containing a letter, a list of relevant providers, and an authorization to disclose Decedent's entire medical record to each listed provider. An example of one of Plaintiff's notice letters reads as follows:

Dear Dr. Holland:

Please be advised that Carl Short, surviving spouse of Allison Short, is giving you notice pursuant to T.C.A. 29-26-121 that a medical malpractice claim will be filed against you within the time period required by law. The claim will be filed by Carl Short, as surviving spouse of Allison Short. . . .

This firm will be representing Mr. Short. Our address and contact information appears in this letter. If you wish to correspond or talk with this firm about this matter, please direct your inquiry to the undersigned.

Attached please find a list of providers to whom a substantially similar notice is being sent pursuant to T.C.A. 29-26-121(a). These providers are: Michael D. Phillips, M.D., Leila K. Davis, M.D., Isham C. Hewgley, III, M.D., Turkey Creek Medical Center, Metro Knoxville HMA, LLC, Tennova Women's Care-Turkey Creek, Knoxville HMA Physician Management, LLC, William K. Webb, M.D., Stat Care Pulmonary Consultants, Summit Medical Group, PLLC, Ernest Brian Kemp, M.D.,

Knoxville Infectious Disease Consultants, P.C., William J. Smith, M.D., Sudha Raghavan Nair, M.D., and EmCare Physician Providers, Inc., a/k/a EmCare Physician Services, Inc, a/k/a EmCare, Inc.

As required by T.C.A. §29-26-121(a)(2)(E), Mr. Short has executed a HIP[A]A-compliant medical authorization authorizing you to obtain complete medical records from Michael D. Phillips, M.D., Leila K. Davis, M.D., Isham C. Hewgley, III, M.D., Turkey Creek Medical Center, Metro Knoxville HMA, LLC, Tennova Women's Care-Turkey Creek, Knoxville HMA Physician Management, LLC, William K. Webb, M.D., Stat Care Pulmonary Consultants, Summit Medical Group, PLLC, Ernest Brian Kemp, M.D., Knoxville Infectious Disease Consultants, P.C., William J. Smith, M.D., and Sudha Raghavan Nair, M.D., and and [sic] EmCare Physician Providers, Inc., a/k/a EmCare Physician Services, Inc, a/k/a EmCare, Inc.[2]

Neither this Notice, nor the medical authorization, waives the common law physician patient privilege concerning the care and treatment of Allison Short. We expect that you will not communicate with any person, other than your attorney, about the care and treatment of Allison Short.

(Footnote added). In the HIPAA authorization portion of the packet, the following was stated as to disclosure:

I authorize the use or disclosure of the above named individual's [Decedent's] health information as described below:
The following individual or organization is authorized to make the disclosure:
Provider: Douglas E. Holland, M.D.
The type and amount of information to be used or disclosed is as follows:
(include dates where appropriate) . . . X entire record . . .

***

This information may be disclosed to and used by the following individual or organization for the purpose of a legal matter . . . [the listed providers]

---

[2] With the parties' agreement, Sparrow Emergency Physicians, PLLC later was substituted into the case in place of EmCare Physician Providers, Inc., EmCare Physician Services, Inc., and EmCare Inc.

(Paragraph numbers omitted).  In September 2018, Physician Defendants filed a motion to dismiss.  A hearing was conducted on Physician Defendants' motion, and in November 2018, the Trial Court granted the motion.  The Hospital moved to dismiss as well and its motion, too, was granted.  In December 2018, the Trial Court entered its order of dismissal.  The Trial Court stated:

> This cause came to be heard before the Honorable William Ailor on November 2, 2018 for the Motion to Dismiss filed by Defendants Sparrow Emergency Physicians, PLLC, Douglas E. Holland, M.D., and Michael D. Phillips, M.D., and on November 30, 2018 for the Motion to Dismiss filed by Defendant Metro Knoxville HMA, LLC d/b/a Turkey Creek Medical Center and the Response and Motion to Reconsider filed by Plaintiffs. Based on the Motions to Dismiss, Memorandums in Support, Responses in Opposition, argument of counsel, and the entire record in this matter, the Court finds as follows:
>
> This is a health care liability action governed by Tenn. Code Ann. § 29-26-121.  The Court is faced with a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can get granted.  The Court must look at the case in the light most favorable to the nonmoving party and give all inferences in favor of the nonmoving party, the Plaintiff.
>
> In this matter, the Plaintiff's previous counsel, four days prior to the expiration of the statute of limitations, sent a letter dated May 16, 2017 to numerous medical providers, including the named Defendants.  Plaintiff's letter included (1) a list of names and addresses of all medical providers being sent a copy of the notice and (2) an authorization permitting disclosure of Ms. Short's health information to each of the named providers.
>
> The Defendants' Motion to Dismiss is based on the claim that the authorization provided by Plaintiff does not comply with Tenn. Code Ann. § 29-26-121(a)(2)(E), which requires presuit notice to include: "A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice."
>
> In this case, the medical authorization, which was attached to the Response of the Plaintiff and has the caption, "Authorization to Disclose Health Information," reads as follows, "I authorize the use or disclosure of the above-named individual's health information as described below.  The following individual or organization is authorized to make the disclosure," and then it has in this particular instance the provider, "Metro Knoxville HMA," and has an X by "entire record."

-4-

The Authorization continues under paragraph 5 to state, "This information may be disclosed to and used by the following individual or organization for the purpose of a legal matter," and then has a listing of all of the same health care providers that were in the list that was sent with the authorization and the letter from Plaintiff's initial counsel.

Tenn. Code Ann. § 29-26-121 is the controlling statute with regard to health care liability notices and compliance with that notice requirement. In this instance the Court finds that the authorization was HIPAA-compliant; however, it did not comply with Section (E) of Tenn. Code Ann. § 29-26-121(a)(2)(E) because it did not authorize the health care providers "to obtain" medical records. It simply authorized the health care providers to make a disclosure. The intent of the statute is to allow medical providers an opportunity to fully investigate a plaintiff's potential health care liability action during the presuit period, which has been clearly set forth by the Courts of Appeals and the Tennessee Supreme Court, most recently in *Parks v. Walker*, No. E2017-01603-COA-R3-CV, November 28, 2018. In order to comply with Tenn. Code Ann. § 29-26-121(a)(2)(E), an authorization, even if HIPAA compliant, must permit medical providers "to obtain" medical records.

Based on the record before it, the Court is of the opinion that Defendants' Motions are well-taken and are GRANTED. Plaintiff's Motion to Reconsider is denied. Accordingly, Defendants Sparrow Emergency Physicians, PLLC, Douglas E. Holland, M.D., Michael D. Phillips, M.D., and Metro Knoxville HMA, LLC d/b/a Turkey Creek Medical Center are hereby DISMISSED from this matter based on Plaintiff's failure to comply with T.C.A. § 29-26-121. This dismissal is with PREJUDICE because the 120-extension to the statute of limitations is unavailable to the Plaintiff due to defective presuit notice, and because Plaintiff filed this action outside of the applicable one-year statute of limitations.[3]

This is a FINAL APPEALABLE ORDER with regard to these Defendants.

(Footnote in original but renumbered). Plaintiff timely appealed to this Court.

---

[3] Plaintiff has raised the argument that a dismissal based on non-compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) should be without prejudice because the provision of pre-suit notice, despite the above-noted deficiencies, was sufficient to trigger the 120-day extension of the applicable statute of limitations. This Court acknowledges Plaintiff's preservation of this issue for appellate review should it be warranted.

**Discussion**

Although not stated exactly as such, Plaintiff raises the following issues on appeal: 1) whether the Trial Court erred in holding that Plaintiff's method of permitting Defendants access to Decedent's medical records failed to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E); and, 2) whether the Trial Court erred in dismissing the Hospital where that party already possessed Decedent's pertinent medical records. The Hospital raises its own separate issue of whether Plaintiff can still pursue a claim against it if Physician Defendants are dismissed where the claims against the Hospital are vicarious in nature.

This case was resolved on a motion to dismiss. Our standard of review is *de novo* with no presumption of correctness. *J.A.C. by and through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 509 (Tenn. Ct. App. 2016). We first address whether the Trial Court erred in holding that Plaintiff's method of permitting Defendants access to Decedent's medical records failed to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E). This statute requires plaintiffs in healthcare liability suits to send as part of their pre-suit written notices "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E) (2012). A HIPAA-compliant authorization must contain the following six core elements:

> (1) Core elements. A valid authorization under this section must contain at least the following elements:
>
> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
>
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
>
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
>
> (iv) A description of each purpose of the requested use or disclosure. The statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.

-6-

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508 (c)(1).

The Trial Court found that Plaintiff's authorizations satisfied these core elements and "that the authorization was HIPAA-compliant . . . ." The problem with Plaintiff's authorizations, according to the Trial Court, stemmed from Tenn. Code Ann. § 29-26-121(a)(2)(E). However, not every failure to comply perfectly with that statute is fatal to a healthcare liability plaintiff's case. Regarding the degree of noncompliance that will derail a plaintiff's case, our Supreme Court has stated:

A plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E), however, should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records. Thus, we hold that a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

*Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013). The statute "serve[s] an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records." *Id*. at 554. "In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id*. at 556.

The Trial Court, in determining that Plaintiff failed to substantially comply, relied on a recent case with rather analogous facts. In *Parks v. Walker*, No. E2017-01603-COA-R3-CV, 2018 WL 6242461 (Tenn. Ct. App. Nov. 28, 2018), *Rule 11 appl. perm. appeal denied March 27, 2019*, this Court by a majority decision affirmed a trial court's grant of defendants' motion to dismiss on the basis that plaintiff failed to substantially comply with the requirements of the notice statute by failing to provide a HIPAA-

-7-

compliant medical authorization pursuant to Tenn. Code Ann. § 29-26-121(a)(2)(E). Specifically, the *Parks* majority found that the plaintiff's authorization (1) failed to include a description of the purpose of the requested use or disclosure, one of the six core elements; and (2) did not explicitly allow any one of the named parties to request plaintiff's medical records from any of the other listed parties. The majority in *Parks*, deeming these mistakes fatal to the plaintiff's case, discussed as follows:

> [T]he portion labeled "for the purpose of" was left blank when provided to defendants. Defendants contend that, by leaving this section blank, plaintiff provided defendants with an authorization that was not filled out completely with respect to a core element, thus rendering the authorization non-HIPAA compliant. *See* 45 C.F.R. § 164.508(c)(1)(iv).
>
> Defendants also argue that the medical authorizations attached to the first pre-suit notice did not comply with Tenn. Code Ann. § 29-26-121, because they were not HIPAA-compliant medical authorizations "permitting the provider receiving the notice to *obtain* complete medical records from each other." *See* Tenn. Code Ann. § 29-26-121(a)(2)(E) (emphasis added). The authorizations provided to defendants only authorizes them "to release, use or disclose" plaintiff's health records to the other providers listed in the authorization. Defendants argue that plaintiff has therefore failed to provide them with authorizations permitting defendants to "obtain" plaintiff's medical records. *See* Tenn. Code Ann. § 29-26-121(a)(2)(E).

***

> Plaintiff argues, in her response to defendants' motions to dismiss, that the deficiencies in her authorizations are "merely . . . hyper technicali[ties]" advanced by defendants in order "to avoid civil responsibility for [p]laintiff's injuries based on a purely procedural issue." While the Supreme Court has held that "[a] plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) . . . should not derail a healthcare liability claim," it concluded that a plaintiff must still substantially comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E). *Stevens*, 418 S.W.3d at 555. In determining whether a plaintiff has substantially complied with the statute, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id*. at 556.

"Defective authorizations" are defined in 45 C.F.R. § 164.508(b)(2). An authorization is not valid if, among other things, it "has not been filled out completely, with respect to an element described by paragraph (c) of this section." *See* 45 C.F.R. § 164.508(b)(2). A "description of each purpose of the requested use or disclosure" is a core element. *See* 45 C.F.R. § 164.508(c)(iv). As noted above in this opinion, plaintiff's authorization was not complete, and it did not include a description of the purpose of the requested use or disclosure, as required. Therefore, we affirm the trial court's holding that the omission of a core element constituted a lack of substantial compliance with the statutory requirements.

Next, as noted above, the authorization sent to each defendant authorizes them to "release, use or disclose" the health records of plaintiff to the other named providers. The authorization then lists the providers to whom the entity is authorized to release the records. Plaintiff alleges that this language is sufficient to allow any one of the named parties to request plaintiff's medical records from any of the other listed parties and to obtain the medical records. The trial court disagreed holding that "the plain language of the form does not allow this." The trial court stated that

> [i]t only allows [doctor] to release, use, or disclose medical records. Thus, if Dr. Walker sends this form to another provider and asks that provider to send the plaintiff's medical records, the form simply does not provide authorization for them to do so. The plaintiff's response is that each provider can look at the list of providers and should know that each of them also received their own authorization form allowing them to release, use or disclose the material information. However, this is not what the law requires. In order to be effective, the authorization form must allow a medical provider to obtain records from the other providers.

We affirm the trial court's holding that plaintiff's authorization is not sufficient to enable defendants to obtain plaintiff's medical records.

*Parks*, 2018 WL 6242461, at *1-3.

Plaintiff argues "[t]here is no rational reason to require plaintiffs . . . to provide authorization forms that the recipient can then send to another healthcare defendant and request release of the patient's records" and that "Plaintiff's method was equally valid and much more efficient." In response, Physician Defendants argue in their brief that

-9-

Plaintiff's authorization was "useless" because it "only authorize[d] themselves to disclose medical records and not to obtain records from any other provider." The Hospital adds that it could not even reach out to other providers because "Plaintiff's letter and the HIPAA authorization contained very clear instructions not to discuss the patient's treatment with anyone other than the providers' attorneys."

Having reviewed the parties' respective arguments and the relevant law, we now examine Plaintiff's pre-suit notice packet to determine exactly what it allowed Defendants to do. To recap, the letter accompanying Plaintiff's HIPAA authorization stated: "As required by T.C.A. §29-26-121(a)(2)(E), Mr. Short has executed a HIP[A]A-compliant medical authorization authorizing you to obtain complete medical records from . . . ." The letter also stated: "Attached please find a list of providers to whom a substantially similar notice is being sent pursuant to T.C.A. 29-26-121(a)." The authorization allowed the recipient to disclose Decedent's entire medical record to each specified provider for the purpose of a legal matter.

Defendants, arguing that they could not use the authorizations, point to language in the accompanying notice letter whereby Plaintiff preserved the physician patient privilege and admonished them not to discuss Decedent's treatment with anyone other than their lawyer. This language, however, is consistent with authorization to obtain Decedent's medical records. Defendants are keen to cite Plaintiff's notice letter where he asserted privilege but understandably do not highlight that part of the notice letter explicitly stating that substantially similar notices were being sent to the other providers pursuant to statute "authorizing you to obtain complete medical records . . . ." Surely, the notice letter either is to be considered along with the authorization or it is not. Defendants may not pick and choose which portions they care to attribute significance to. It must be read together and in whole.

Nothing contained in the required written notice letter is necessary to make the HIPAA authorizations furnished here HIPAA-compliant. The HIPAA authorizations were, as found by the Trial Court, HIPAA-compliant. The notice letter, however, can and did serve to inform Defendants that all other listed medical providers had received a similar HIPAA-compliant authorization so as to allow each listed medical provider to obtain complete medical records from every other provider.

Defendants do not identify, nor does our own research yield, any such thing as a standard model HIPAA authorization. Rather than form, what matters is that the authorization is effective to allow listed medical providers to obtain the medical records from each other. Tenn. Code Ann. § 29-26-121(a)(2)(E) requires that a healthcare liability plaintiff provide a HIPAA-compliant medical authorization permitting each provider receiving the notice to obtain complete medical records from each other. The

-10-

term "obtain" is not magical. If an authorization permits a defendant to obtain medical records but does not say "obtain," it is compliant all the same. Had Defendants requested records from the other providers, each of whom received their own similar authorization, they would have received the records. There can be no dispute that Defendants knew this from the clear language of the notice letter. Defendants incurred no prejudice from Plaintiff's method.[4]

Defendants argue further that the risk of a HIPAA violation was too great for them to request the records. Physician Defendants characterize Plaintiff's position as expecting "that each provider should have assisted in fixing Plaintiff's clear error by calling the 15 other providers, fingers crossed and in hopes that the other providers had received a medical authorization allowing them to disclose health information." According to Physician Defendants, "[t]he health care provider would have been at a substantial risk of violating HIPAA, the implied covenant of confidentiality that exists between physicians and patients, Tennessee patient privacy laws, and the terms of the notice they received by making that phone call." However, Physician Defendants ignore that Plaintiff's authorization clearly permits the recipient to disclose Decedent's *entire medical record,* which of necessity would show that the individual was the physician's patient, to the listed providers. As Decedent's entire medical record could be disclosed safely, each listed provider safely could contact the other listed providers to request records without any reasonable fear they were violating HIPAA.

This Court has rejected the proposition that "a health care liability defendant has a duty to assist a plaintiff achieve compliance or to test whether an *obviously deficient* HIPAA form would allow the release of records." *J.A.C.*, 542 S.W.3d at 514 (emphasis added). We believe the converse is true, as well. That a healthcare liability defendant has no duty to test an obviously deficient HIPAA form does not mean such a defendant should succeed in getting the lawsuit dismissed by refusing to act on a perfectly valid, or ostensibly valid, HIPAA authorization. The HIPAA form in the instant case can hardly be said to be "obviously deficient" when it adheres to the core elements required of such forms and was, in fact, found by the Trial Court to be HIPAA-compliant. While we appreciate fully defense lawyers' duty to represent their client's interests, Defendants' failure to request medical records from the listed providers on the basis of an unfounded hypothetical exposure to legal penalties when Plaintiff provided a completely viable

---

[4] In the case of *Martin v. Rolling Hills Hosp., LLC*, No. M2016-02214-COA-R3-CV, 2018 WL 3097231 (Tenn. Ct. App. June 22, 2018), this Court found substantial compliance notwithstanding the omission of three core elements because defendants failed to demonstrate prejudice. On November 16, 2018, our Supreme Court granted permission to appeal in *Martin* and expressed a particular interest in the question of, among other things, the proper role of prejudice in the substantial compliance analysis and determination. That case is pending. As we discuss in the present case, we expressly find Defendants incurred no prejudice.

means for them to safely obtain the records was unreasonable. To obtain the medical records necessary for their defense in the lawsuit, all Defendants had to do was ask the other listed medical providers for them, and they and their attorneys knew it.

Defendants stand on *Parks*, in which a Rule 11 application for permission to appeal was denied by our Supreme Court but which is not a published case at the time of the filing of this Opinion. There is at least one major distinction between the instant case and *Parks*. Unlike in *Parks*, Plaintiff did not fail to identify the purpose for the disclosure. Indeed, Plaintiff's authorization satisfied the core elements of a HIPAA authorization while the authorization in *Parks* did not. Like *Parks*, however, Plaintiff did not specifically use language in the HIPAA authorization portion of his pre-suit package permitting the providers to obtain medical records. We believe the present case is distinguishable from *Parks*. However, to the extent this Opinion may conflict with *Parks*, we submit that *Parks* was decided wrongly.[5]

Our Supreme Court must have meant the modifier "substantially" to mean something. We hold that HIPAA authorizations furnished to listed medical providers substantially comply with the statute if (1) they are sufficient to enable those medical providers to obtain the patient's medical records from each other simply by requesting them, and (2) the listed medical providers are informed in the required written notice that all they have to do is ask the other listed medical providers for the records to obtain them because HIPAA authorizations have been furnished to the other providers allowing them to disclose the patient's records. In such a situation, as is this case, the medical defendants will have suffered no prejudice.

We hold that Plaintiff substantially complied with Tenn. Code Ann. § 29-26-121(a)(2)(E). We reverse the judgment of the Trial Court dismissing the complaint and remand for this matter to proceed. All other issues are pretermitted.

---

[5] We respectfully suggest that, should this Opinion be interpreted as irreconcilable with *Parks*, this matter is suitable for final resolution by our Supreme Court.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded for further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellees, Sparrow Emergency Physicians, PLLC, Douglas E. Holland, M.D., Michael D. Phillips, M.D., and Metro Knoxville HMA, LLC d/b/a Turkey Creek Medical Center.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-13-